## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

United States of America,

               Plaintiff,

    v.

Jose Mercado

               Defendant.

**DECISION and ORDER**

24-mj-561-MJP

### INTRODUCTION

**Pedersen, M.J.** The government has asked me to order Defendant Jose Mercado detained pending trial. Based on the factors set out at 18 U.S.C. § 3142(g), I conclude that there are conditions I can set that will reasonably assure Mercado's appearance and the safety of any other person and the community. I likewise conclude that there are conditions I can set to assuage the government's fears about obstruction. Detention is not warranted.

This Court thus **ORDERS** Mercado released pending trial under strict conditions it will set at his appearance later today, Thursday, June 20, 2024. Those conditions will include home detention.

### BACKGROUND

This case began with the government's criminal complaint. (ECF No. 1, June 14, 2024.) The government has charged Mercado with offenses under 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) for possession with intent

1

to distribute cocaine. Attached to the complaint is the affidavit of James Gashlin, DEA Task Force Officer. ("Gashlin Affidavit.")

The Gashlin Affidavit recounts a controlled purchase of cocaine from Mercado by an undercover agent. (Gashlin Aff. ¶¶ 5–8.) After the controlled purchase, law enforcement obtained a search warrant and found almost half a kilogram of cocaine at Mercado's residence. (*Id.* ¶¶ 9–10 (noting a total of "approximately 436.81 grams of cocaine").) Yet the complaint makes no mention of any guns recovered at Mercado's residence, nor did the government's proffer suggest that Mercado possessed a weapon for his alleged drug dealing.

While the government did not allege that Mercado possessed a weapon, it did provide other information during the detention hearing on June 18, 2024. The government noted encrypted discussions between Mercado and an alleged codefendant, Michael DeJesus, about purchasing and distributing cocaine. The messages indicate that Mercado and DeJesus had access to kilograms of cocaine that they could resell for thousands of dollars. Yet again, however, none of the messages the government proffered mentioned weapons or violence.

The government also alleges that Mercado made incriminating statements during a controlled purchase by an undercover law enforcement officer. These statements allegedly include Mercado bragging about the quality of his product. Mercado was so sure of his product that

2

he told the undercover officer that his product carries a money-back guarantee. But the government did not share audio of this conversation that could provide context.

Relatedly, while the government maintains that Mercado attempted to arrange for the destruction of evidence from his jail cell, the same context problem is present. Mercado allegedly asked someone, possibly his romantic partner, to delete the contents of his phone. The government asserts that if released Mercado could try to destroy other evidence to obstruct justice.

## LEGAL STANDARD

Congress enacted the Bail Reform Act in 1984 to provide the procedure for release or detention of defendants pending trial. 18 U.S.C. §§ 3141, *et seq.* (codifying the Bail Reform Act). 18 U.S.C. § 3142 provides the procedures and standards for release or detention of a defendant pending trial.

### *Unless the government brings a motion for detention, the defendant must be released pending trial.*

A defendant awaiting trial must be released unless the government successfully moves for detention. *See United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (explaining that the Bail Reform Act codified the "traditional presumption favoring pretrial release 'for the majority of Federal defendants'" (quoting legislative history)). The government may move for detention in the situations anticipated by 18

3

U.S.C. §§ 3142(f)(1)(A)–(E). Likewise, the Court may hold a detention hearing under §§ 3142(f)(2)(A) or (B) "upon motion of the attorney for the Government" or on its own motion. 18 U.S.C. §§ 3142(f)(2)(A) & (B).

### When the government brings a motion for detention, it bears the burden of showing risk of flight or dangerousness.[1]

When the government brings a motion for detention under Section 3142, it bears the burden on risk of flight, dangerousness, or both. The government must demonstrate that the defendant poses a risk of flight by a preponderance of the evidence. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) ("The government retains the ultimate burden of persuasion by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." (collecting cases)). That burden of proof requires the government to show it is more likely than not that the defendant poses a flight risk.

The government must demonstrate dangerousness by clear and convincing evidence. *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). This is a tougher burden to define. Some courts have defined clear and convincing evidence as "something more than" a "preponderance of the evidence, and something less than beyond a reasonable doubt." *Id*. (internal quotation marks omitted) (citing *Addington v. Texas*, 441 U.S. 418, 431 (1979)). A better definition might be that clear

---

[1] I discuss below the applicable legal standard under 18 U.S.C. § 3142(f)(2)(B).

4

and convincing evidence is "evidence that produces in the mind ... a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014) (cleaned up and quotation omitted).

### To determine dangerousness and risk of flight, the Court considers the "g-factors."

To determine whether a defendant should be detained, the Court must consider the factors stated in 18 U.S.C. § 3142(g). These are commonly known as the "g-factors."

"[A] district court has broad discretion to determine how much weight to assign the factors listed in § 3142(g) based on the circumstances of a particular case." *Zhang*, 55 F.4th at 144. The Second Circuit has explained that discretion by discussing how courts may weigh the g-factors differently in different cases:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant ... That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*Id.* at 149–50 (internal citation omitted). Thus, while the Court must consider each g-factor, the Court may weigh them differently in different cases.

### *While most defendants should not be detained pending trial, courts can consider more than the pending charges in ruling on a detention motion.*

With the burdens and g-factors in mind, courts have observed that "only a limited group of offenders [ ] should be denied bail pending trial." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal quotation marks omitted) (quoting *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)). This is true even where the government has a rebuttable presumption on its side. *See Mercedes*, 254 F.3d at 436 ("Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." (citation omitted)). Even so, if a defendant's dangerousness is apparent, the Court should order detention. *See Chimurenga*, 760 F.2d at 403 (noting that when there is "a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate" (quoting legislative history)).

The Court's assessment of dangerousness can include more than potential acts of physical violence and more than the text of the complaint. *First,* relevant here, the potential for obstruction of justice or witness tampering may constitute a "threat to the integrity of the trial

6

process, rather than more generally a danger to the community," and be sufficient to detain a defendant pending trial. *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (quotation omitted).

*Second*, the Court is not limited to considering only the charges pending against a defendant when "assessing the degree of danger posed by [the] defendant's release." *United States v. Bruno*, 89 F. Supp. 3d 425, 430 (E.D.N.Y. 2015) (alteration added); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (reversing release and ordering detention while rejecting the "requirement that the violent conduct" serving as a basis for detention "be connected to the activity charged in the indictment"). So, in considering the g-factors, the Court can and will address matters beyond the four corners of the complaint. *See, e.g., United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022) (discussing favorably the district court's consideration of "social media posts by" the defendant "in another case" in determining that the defendant posed a danger on release).[2]

## DISCUSSION

The government has moved to detain Mercado on several grounds. *First*, the government has charged Mercado with a crime of violence for which a maximum term of imprisonment of ten years or

---

[2] Here, for example, the court has considered the government's proffer about text messages between Mercado and a codefendant.

more is prescribed. 18 U.S.C. § 3142(f)(1)(A). *Second*, the government has charged Mercado with an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act. *Id*. § 3142(f)(1)(C). *Third*, the government moves for detention because Mercado allegedly poses a serious risk of flight. *Id*. § 3142(f)(2)(A). *Finally,* the government argues that Mercado poses a serious risk of obstruction of justice. *Id*. § 3142(f)(2)(B).

### *Although the rebuttable presumption of 18 U.S.C. § 3142(e)(3)(A) applies, Mercado has rebutted it.*

The government's complaint is supported by probable cause. So, the rebuttable presumption of 18 U.S.C. § 3142(e)(3)(A) applies because the charge pursuant to 18 U.S.C. § 841 is "an offense for which a maximum term of imprisonment of ten years or more is prescribed" under the Controlled Substances Act.[3]

Where this presumption applies, it "places on the defendant only the burden of coming forward with evidence to rebut it." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986). "The government retains the burden of persuasion." *Id*. (citing *Chimurenga*, 760 F.2d at 405). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear

---

[3] The government proffered that Mercado faces 20 years of incarceration as currently charged, a one million dollar fine, three years to life post-release supervision, and a special assessment.

entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes*, 254 F.3d at 436 (citing *Martir*, 782 F.2d at 1144).

Here, I conclude that Mercado has met the burden of production for purposes of rebutting the presumption. Ultimately, I also conclude that the government has failed to meet its burden of persuading this Court about detention. I conclude as much by discussing each g-factor. *See Mercedes*, 254 F.3d at 436 ("To determine whether the presumptions of dangerousness and flight are rebutted, the district court considers" the g-factors.).

### Detention is not warranted for obstruction of justice.

Because courts encounter motions for detention under Section 3142(f)(2)(B) less often, the Court discusses this provision separately. "Detention is [ ] warranted if there is 'a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.'" *United States v. Campos*, No. 19-CR-575-2 (FB), 2019 WL 7049953, at *1 (E.D.N.Y. Dec. 23, 2019) (quoting 18 U.S.C. § 3142(f)(2)(B)). "The government must establish a risk of obstruction by a preponderance of the evidence." *Id.* (citing *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)).

To begin, the Court lacks the whole story about Mercado's alleged obstruction. Apart from its proffer, the government has not provided

evidence. The government quoted from a lone phone call during its prof-
fer, although it alleged there were others in which Mercado tried to or-
chestrate the destruction of evidence. But none of those are before the
Court, other than the government's vague allusion to them. This is not
enough to carry the government's burden on obstruction.

Admittedly, the content of Mercado's call—as proffered—is dam-
aging. He asks his romantic partner to use the cloud to destroy evidence
on his phone like "last time." But the federal bail statute "by its nature,
is always looking forward." *United States v. Madoff*, 586 F. Supp. 2d 240,
250 (S.D.N.Y. 2009). "The question is not simply whether [the defend-
ant's past] actions can be considered obstruction, but whether there is a
*serious* risk of obstruction in the future." *Id.* (alteration added and em-
phasis in original).

After the detention hearing, Mercado should have no doubt that
he will be under constant surveillance, and that the government already
has evidence supporting an obstruction charge. He should likewise an-
ticipate that the government will take steps to prevent obstruction such
as disconnecting any phones it has from the cloud or by mirroring their
contents. Further, the government's proffer did not suggest a method
whereby Mercado could erase the contents of the phones seized from De-
Jesus, and it was the DeJesus phones that the government proffered
contained messages from the Signal application showing the drug

transactions between DeJesus and Mercado. On this record, I cannot conclude that there is a "serious risk" of obstruction or attempts at it "going forward." *Id.*[4]

That said, there is surely *some* risk. But even considering that risk, or even if I found that Mercado posed a serious risk of obstruction, I would still need to determine "whether any condition or combination of conditions will reasonably assuage that risk." *Campos*, 2019 WL 7049953, at * 1 (citing *Friedman*, 837 F.2d at 49). Here, there are such conditions.

The conditions I set will "severely limit" Mercado's "ability to engage in other crimes or acts of obstruction without the government's knowledge." *Id.* at *2. They will include home detention, electronic monitoring, and the posting of bond. Mercado also faces the prospect of random visits from Probation. "The Court concludes that this security—and the risk of its loss should [Mercado] violate any of the conditions of his release—provides adequate 'moral suasion' to ensure his compliance." *Id.* (alteration added) (quoting *United States v. Batista*, 163 F. Supp. 2d

---

[4] Additional support for my conclusion comes from Mercado's adherence to the conditions of pretrial and post-conviction release, although I discuss that more fully later.

222, 224 (S.D.N.Y. 2001).[5] So, despite the government's misgivings about obstruction, release on conditions is the right tack.

***The g-factors favor release.***

The Court has considered the parties' proffers made during the detention hearing. The Court finds that the g-factors favor release on conditions. The Second Circuit has affirmed district courts under similar circumstances. *See, e.g., United States v. Mattis*, 963 F.3d 285, 295–96 (2d Cir. 2020) (affirming district court's grant of pretrial release despite "strong" evidence of guilt given the defendants' personal characteristics and availability of property for bond). Indeed, the cases in which the Second Circuit has reversed for clear error a district court's release order involve circumstances far different from Mercado's. *See id*. (collecting cases). These cases are marked by weapons possession, alleged violent conduct (including murder and conspiracy to commit it), violations of supervised release, histories of domestic violence, and threats of future physical harm to victims. *See id*. Here, release on conditions is appropriate.

---

[5] One of the conditions I will set is the posting of bond. That bond will involve Mercado's mother, Elizabeth Ramos, posting her property. That is the property to which I am sending Mercado for home detention. If Mercado violates his conditions of release, he faces the prospect of depriving his mother—and himself—of a home. That is, in my view, sufficient moral suasion to keep Mercado in line.

**The factor involving the nature and circumstances of the offense charged slightly favors detention.**

*First*, the Court considers "the nature and circumstances of the offense charged," under 18 U.S.C. § 3142(g)(1), "including whether the offense is a crime of violence[.]" *Id.*; *see also United States v. Choudhry*, 941 F. Supp. 2d 347, 350 (E.D.N.Y. 2013). I note that in *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985), the Court of Appeals wrote: "[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'" Even so, this factor does not overwhelm the others.

Here, I must take the complaint as it is currently written. *See Zhang*, 55 F.4th at 149 (noting that the district court considered all "available information" to determine if the defendant posed a danger on release). The complaint alleges nothing about Mercado being violent. It likewise has nothing to say about Mercado possessing a weapon for his drug dealing. The most the government can (and did) say is that Mercado once blocked police from entering his apartment on a long-ago search warrant.

While the Court may consider "the harm being caused by the distribution" of cocaine, and that this "can be more dangerous than some crimes that are categorized as crimes of violence[,]" this factor does not favor the government overwhelmingly at all. *See United States v. Zaso*, No. 22-CR-74-A, 2022 WL 4077675, at *2 (W.D.N.Y. Sept. 6, 2022)

(quoting *United States v. Mendez*, No. 1:19-CR-00245 EAW, 2020 WL 3263446, at *4 (W.D.N.Y. June 17, 2020)), *aff'd*, No. 22-2050, 2022 WL 17741537 (2d Cir. Oct. 31, 2022). Indeed, unlike other cases where this District has detained drug defendants, Mercado has a spotless record while on release. *See id.* at *3 (noting that committing additional offenses while on supervised release was "the strongest possible evidence" for detention (quoting *United States v. Talbert*, No. 20-266, 2020 WL 6048788, at *5 (W.D. Pa. Oct. 13, 2020))). This persuades me that Mercado can be trusted on release despite his apparent weekend effort to destroy evidence against him. Thus, and for the other reasons stated, I do not weigh this factor as heavily in the government's favor.

### The weight of the evidence factor favors detention.

*Second,* the Court must consider the weight of the evidence against Mercado. But "it is not the Court's role at this stage" to evaluate "guilt or innocence." *United States v. Enix*, 209 F. Supp. 3d 557, 573 (W.D.N.Y. 2016). The Court's present duty is to determine if it can set conditions of release that will "reasonably assure the safety of the community and the appearance of the defendant at court proceedings." *Zhang*, 55 F.4th at 152. I find there are such conditions. But first, some brush-clearing.

Before reaching my conclusion about conditions, I find it appropriate to make "a preliminary assessment of the strength or the

weakness of the evidence." *Id*. Beyond generally showing a propensity for dangerous and unlawful drug-dealing, I may find that the weight of the evidence suggests that Mercado is a flight risk. *See Zhang*, 55 F.4th at 151 ("The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." (citing *Sabhnani*, 493 F.3d at 76)). So, "an increased probability of conviction increases [the] risk of flight." 55 F.4th at 151 (alteration added). The Second Circuit thus concluded: "Where, as here, the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight." *Id*. Ultimately, while the government's evidence is certainly strong, it does not overcome the other factors favoring release.

Here, the government proffered three categories of evidence: (1) phone evidence; (2) a single undercover purchase of cocaine; and (3) a search warrant. I begin where the government began: phone evidence.

In April 2024 the government recovered two phones from an alleged codefendant of Mercado's named Michael DeJesus. On the phones were text messages and conversations between DeJesus and Mercado discussing kilogram quantities of cocaine. The two also allegedly communicated via "Signal," an end-to-end encrypted phone application. In that application, DeJesus had "JM" listed as a contact. The government

proffered that "JM," whose phone number matched the defendant's, is Jose Mercado, and that the phone contained Signal messages between DeJesus and Mercado discussing kilogram quantities of cocaine.

In February 2024, DeJesus purportedly received some cocaine of exceptional quality with retail value of $16,500 and told Mercado about it. Mercado responded that he "gotta finish this little bit I got." DeJesus discussed raising the sale price to $17,000 since the cocaine was "GAF," which the government proffered meant "good as fuck."

In April 2024, Mercado and DeJesus engaged in a lengthy exchange of messages about how much money Mercado had to give to DeJesus to make a purchase. Following the conversation, DeJesus went to Mercado's residence.[6] After the meet-up, DeJesus went to New York City the next day to obtain more cocaine.

In May 2024, the undercover officer ("UC") I mentioned earlier purchased 62 grams of cocaine directly from Mercado for $1,300. During the purchase, the two chatted. Mercado told the UC about himself and his daily routine. After finishing a shift at his job with the City of Rochester around 3 p.m., Mercado goes to the gym, and then sells cocaine.

Mercado bragged to the UC about the high-quality nature of the cocaine, that it was crumbly and had no cut in it. He offered the UC a money back guarantee if he did not like the cocaine. Mercado then told

---

[6] DeJesus's vehicle had a tracker on it monitored by the government.

the UC that he could call Mercado, order what he wanted, then pull up and obtain it. Finally, the government proffered that Mercado said this to the UC: "I don't play. This is what the fuck I do." While certainly damning as far as the weight of the evidence goes, I hesitate to consider such statements for anything other than that purpose (such as dangerousness or risk of violating conditions of release). Again, the government has not provided context, like audio of this conversation. I cannot know if the agent elicited Mercado's statements, or if they were made without prompting. Still, the government's case is sound, suggesting some risk of flight.

### The factor directing the Court to look to Mercado's history and characteristics strongly favors release.

If the first two g-factors were all the Court had to consider, the Court would be hard-pressed to release Mercado under any circumstances. But Mercado's record is spotless when it comes to release and supervision. This strongly favors release on conditions.

Mercado's other characteristics likewise favor release. *First*, Mercado is a lifelong resident of Rochester, New York. He has strong connections to the area with employment to which he can return and a family that is supporting him.[7] To facilitate employment, Mercado obtained

---

[7] This is apparent both from Mercado's proffer during the detention hearing and based on the Pretrial Services Report.

17

a GED in 2018. The employment point is significant for me: many defendants do not have a legitimate alternative to drug dealing to support their families. Mercado is different in that respect.

*Second*, based on the Pretrial Services Report, I do not have significant concern about Mercado's physical and mental health, or his substance abuse history. Taken with Mercado's lack of a passport and any travel outside of the United States, I find it highly unlikely that Mercado will fail to appear. I conclude that the government has not met its burden on risk of flight.

While the foregoing pays tribute to my conclusion that release on conditions is appropriate, I am convinced that strict conditions are needed.[8] Despite several drug-related convictions, Mercado has allegedly continued to deal drugs. But this Court cannot allow the weight of the evidence, strong as it is, to condemn defendants like Mercado to pretrial detention. Every indication I have about Mercado's past suggests that he will follow the conditions I will set. Even when facing serious charges before, Mercado obeyed the terms of his supervision. This factor strongly favors release on conditions.

---

[8] The conditions I plan to set are notably stricter than those Probation recommended.

**The nature and seriousness of the danger to any person or the community does not sway me from release on conditions.**

The *final* g-factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As stated, the Second Circuit has recognized that drug dealing poses a danger to the community. *See Leon*, 766 F.2d at 81 (noting "that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'" posed by the suspect's release (citation omitted)). "Congress has determined that '[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate.'" *Chimurenga*, 760 F.2d at 403 (quoting S. Rep. No. 225 at 7; 1984 U.S. Code Cong. & Ad. News at 3189).

There is no strong probability here. True, the government's proffer supports the argument that Mercado has returned to criminal behavior once free from parole or probation. The proffered evidence also supports the conclusion that Mercado's drug dealing is escalating, moving from marijuana to high-quality cocaine in large amounts. But I remain at a loss about how I could find "with the required 'high degree of certainty'" that Mercado poses a danger when he will be subject to stringent conditions of release, especially given his history of compliance with supervision. *United States v. Fox*, 602 F. Supp. 3d 434, 443 (W.D.N.Y.

2022) (quoting *Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985)). And, as noted, the government's current allegations do not involve weapons or physical violence. This factor favors release.

### CONCLUSION

While the weight of the evidence and a defendant's earlier offenses have a role to play, they are not dispositive of detention. After all, "detention is a monumental imposition on personal freedom[.]" *Id.* at 444. My task is to determine if there is a set of conditions that will reasonably assure Mercado's appearance, the safety of all within the community, and that Mercado will not obstruct justice. Because such a set of conditions exists, and because the government has not carried its burdens, I will release Mercado on conditions. For the foregoing reasons, after considering all the evidence, submissions, and proffers noted:

I do not find by a preponderance that if released Mercado poses a serious risk of obstruction of justice;

I do not find by a preponderance of evidence that he poses a serious risk of flight;

The government has not met its burden of showing dangerousness by clear and convincing evidence. In other words, there is a set of conditions I can impose that will reasonably assure me that Mercado will not be a danger to any within the community.

Accordingly, I **ORDER** Mercado's release on conditions. Those conditions will be strict and will include home detention, location

monitoring, and bail guaranteed by real property. I will lay them out fully during today's appearance.

**IT IS SO ORDERED.**

Dated:      June 20, 2024
            Rochester, NY          */s/ Mark W. Pedersen*
                                   MARK W. PEDERSEN
                                   United States Magistrate Judge